UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KENYA K. HALL,<br><br>                          Plaintiff<br><br>     v.<br><br>CHRIS BOYLE, et al.,<br><br>                          Defendants | Case No. 2:24-cv-00800-GMN-BNW<br><br>SCREENING ORDER |

Plaintiff Kenya Hall ("Plaintiff"), who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint ("Complaint") under 42 U.S.C. § 1983, an application to proceed *in forma pauperis*, and a motion for appointment of counsel. (ECF Nos. 1, 1-1, 1-2.)  The matter of the filing fee will be temporarily deferred. The Court now screens Plaintiff's Complaint under 28 U.S.C. § 1915A and disposes of the motion.

I.      **SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a).  In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2).  *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's

claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).  Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).  In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).  Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A formulaic recitation of the elements of a cause of action is insufficient. *See id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.*  "When there are well-pleaded factual allegations, a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (*e.g.*, claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*, fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II. SCREENING OF COMPLAINT

In his Complaint, Plaintiff sues multiple Defendants for events that took place while he was incarcerated at Southern Desert Correctional Center ("SDCC"). (ECF No. 1-1 at 1.) Plaintiff sues Defendants Chris Boyle, Officer Grace Moran, Lt. Karissa Kurrier, Assistant Warden Monique Hubbard-Pickett, Kimberly McCoy, and Warden Ronald Oliver.[1] (*Id.* at 1–3.) Plaintiff brings three claims and seeks monetary and injunctive relief. (*Id.* at 2–8.)

Plaintiff alleges the following. In June 2022, Plaintiff submitted a purchase order to Officer Moran to buy a Score5 tablet from the inmate store. (*Id.* at 3.) A few months later he bought the tablet for $110, a case for $9, and a charger for $9. (*Id.*) Shortly thereafter he tried to return the tablet to Boyle at the inmate store because it had technical issues. (*Id.*) Boyle rejected the return, stating that the tablet worked well. (*Id.*) Later, Plaintiff successfully returned the tablet and charger to Boyle after they malfunctioned. (*Id.*)

On December 23, 2022, Plaintiff requested that Boyle return the tablet and charger to the manufacturer because it was still under warranty. (*Id.*) Boyle confirmed a month later that he sent the items back to the manufacturer. (*Id.*) For several months Plaintiff

---

[1] Plaintiff does not list Kimberly McCoy as a Defendant in the caption of the Complaint, but he does state that she is a Defendant in his allegations. (ECF No. 1-1 at 5.) The Clerk of the Court shall add McCoy to the docket as a Defendant.

sent requests to Boyle to know the status of his returned items. (*Id.*)  Another caseworker also reached out to Boyle for Plaintiff. (*Id.*)  But Boyle did not respond to any of the requests for months. (*Id.*)  Boyle did let Plaintiff know in April 2023, that he was working on the return. (*Id.* at 4.)  However, when Plaintiff reached out directly to the manufacturer, he learned that it did not have any devices returned on his behalf. (*Id.*)

After learning that the tablet and charger were never returned, Plaintiff requested compensation for the items. (*Id.*)  He submitted a grievance and a property claim form. (*Id.*)  Plaintiff's grievance was returned as improper. (*Id.*)  After some issues with the grievance process, Associate Warden Hubbard-Pickett also returned the grievance as improper. (*Id.* at 5.)  Caseworker McCoy said she would help Plaintiff with his grievance, but she never followed up with him. (*Id.*)  Plaintiff also received several other rejections for his grievances. (*Id.*)  When he resubmitted his grievance, stating that the SDCC staff lost his previous grievances and attachments, the prison authorities provided him with a final denial. (*Id.*)  None of the prison staff returned his property or offered him compensation. (*Id.*)

Moran notified Plaintiff that his tablet and charger were never repaired and that they were now irreparably damaged. (*Id.* at 6.)  Plaintiff claims that the prison staff members ignored his inquiries about his belongings until he filed grievances. (*Id.*)  Because it took him so long to get a response about the status of his tablet and charger, the manufacturer told Plaintiff that they were no longer covered by the warranty. (*Id.*)  Plaintiff spent the next month corresponding with Boyle and Moran about trying to get his charger back because Moran told Plaintiff that he could not buy another tablet until the charger was returned. (*Id.* at 7.)  At this point, Moran, Boyle, Kurrier, Hubbard-Pickett, and Oliver had the ability to help Plaintiff receive compensation for his tablet, but they failed to do so. (*Id.*)

Based on these allegations, Plaintiff raises the following claims: (1) Fifth Amendment property claim,[2] (2) Fourteenth Amendment due process grievance claim,

---

[2] Plaintiff attempts to raise a Fifth Amendment claim. (ECF No. 1-1 at 3.)  However, a

and (3) Eighth Amendment deliberate indifference claim.[3] The Court also construes Plaintiff's allegations as raising a Fourteenth Amendment due process intentional deprivation of property claim.

### A.     Intentional Deprivation of Property Claim

While an authorized, intentional deprivation of property is actionable under the Due Process Clause, neither a negligent nor intentional unauthorized deprivation of property by a prison official is actionable if a meaningful post-deprivation remedy is available for the loss. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982); *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987).

The Court finds that Plaintiff states a colorable intentional deprivation of property claim. Liberally construing the allegations of the Complaint, Plaintiff states that when he returned his tablet and charger to Boyle at the inmate store through the official return process, he never got them back. Boyle did not return them, and, while Moran, Hubbard-Pickett, and McCoy processed Plaintiff's grievances, they failed to help him recover the electronics. The failure to get the tablet and charger back, when viewed in the light most favorable to Plaintiff, is construed as an authorized deprivation of property on screening. This claim will proceed against Defendants Boyle, Moran, Hubbard-Pickett, and McCoy.

---

Fifth Amendment claim can only be made against the federal government, not state actors. *See Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) (explaining "[t]hat the Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States."). The Court therefore dismisses Plaintiff's Fifth Amendment claim with prejudice, as amendment would be futile.

[3] Plaintiff also states that he is bringing an Eighth Amendment claim of "deliberate indifference." (ECF No. 1-1 at 6.) This type of claim usually relates to the failure of prison officials to treat an inmate's serious medical condition. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (stating that a prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmates). Because Plaintiff's claim only relates to the loss of his property, the Court dismisses this claim without prejudice.

### B. Grievance Claim

Prisoners have no stand-alone due process rights related to the administrative grievance process. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding that a state's unpublished policy statements establishing a grievance procedure do not create a constitutionally protected liberty interest); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest in the processing of appeals because there is no liberty interest entitling inmates to a specific grievance process).

The Court finds that Plaintiff fails to state a grievance claim on screening. While Plaintiff alleges that his grievance process was frustrated and impeded, he does not have a right to have prison officials process or investigate an inmate grievance in any specific way. Therefore, the Court dismisses this claim with prejudice, as amendment would be futile.

### C. Remaining Defendants

The Court dismisses Defendants Kurrier and Oliver from the Complaint without prejudice. Plaintiff states that these Defendants had the ability to help him receive compensation for his tablet, but they failed to do so. His allegations are conclusory and are insufficient to state a colorable claim against them. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that a defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant.").

## III. MOTION FOR APPOINTMENT OF COUNSEL (ECF NO. 1-2)

Plaintiff files a motion for the appointment of counsel. (ECF No. 1-2.) In his motion, Plaintiff requests counsel for the following reasons: (1) he cannot afford counsel; (2) the issues in the case are complex; (3) he has limited access to the law library; (4) his family has been unable to hire counsel; and (5) he has limited knowledge of the law. (*Id.* at 1–2.)

A litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil rights claims. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any

person unable to afford counsel." However, the court will appoint counsel for indigent civil litigants only in "exceptional circumstances." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action). "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Id.* "Neither of these considerations is dispositive and instead must be viewed together." *Id.*

In the instant case, the Court does not find that the reasons Plaintiff states in his motion constitute exceptional circumstances that warrant the appointment of counsel at this time. All of Plaintiff's reasons for requesting counsel are insufficient to warrant the appointment of counsel because they are common claims that many inmates make. *See Baker v. Macomber*, No. 2:15-CV-00248-TLN-AC, 2020 WL 1182495, at *1 (E.D. Cal. Mar. 12, 2020) (finding that "[c]ircumstances common to most prisoners . . . do not establish exceptional circumstances that warrant a request for voluntary assistance of counsel"). Therefore, the Court denies the motion seeking the appointment of counsel without prejudice.

**IV.   CONCLUSION**

It is therefore ordered that the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

It is further ordered that the Clerk of the Court file the Complaint (ECF No. 1-1) and send Plaintiff a courtesy copy.

It is further ordered that the motion for appointment of counsel (ECF No. 1-2) is denied without prejudice.

It is further ordered that Defendants Kurrier and Oliver are dismissed from the Complaint without prejudice.

It is further ordered that the Clerk of the Court add McCoy to the docket as a Defendant.

It is further ordered that Plaintiff's Fifth Amendment property claim is dismissed

with prejudice, as amendment would be futile.

It is further ordered that Plaintiff's Eighth Amendment deliberate indifference claim is dismissed without prejudice.

It is further ordered that Plaintiff's Fourteenth Amendment due process intentional deprivation of property claim will proceed against Defendants Boyle, Moran, Hubbard-Pickett, and McCoy.

It is further ordered that Plaintiff's Fourteenth Amendment grievance claim is dismissed with prejudice, as amendment would be futile.

It is further ordered that given the nature of the claim(s) that the Court has permitted to proceed, this action is stayed for 90 days to allow Plaintiff and Defendant(s) an opportunity to settle their dispute before the Court determines whether to grant Plaintiff's *in forma pauperis* application, the $350.00 filing fee is paid, an answer is filed, or the discovery process begins.  During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers may be filed in this case, and the parties will not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the Court to do so.  The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order.  Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General will file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay.  If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response.  Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

"Settlement" may or may not include payment of money damages.  It also may or may not include an agreement to resolve Plaintiff's issues differently.  A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

It is further ordered that if the case does not settle, then the Court will determine whether to grant Plaintiff's *in forma pauperis* application. Plaintiff will be required to pay the full $350.00 statutory filing fee for a civil action regardless of whether the Court grants his *in forma pauperis* application. This fee cannot be waived, and the fee cannot be refunded once the Court enters an order granting Plaintiff's application to proceed *in forma pauperis*. If Plaintiff is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b). If Plaintiff is not allowed to proceed *in forma pauperis*, the full $350 statutory filing fee for a civil action plus the $55 administrative filing fee, for a total of $405, will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party will file a "motion to exclude case from mediation" no later than 21 days prior to the date set for mediation. The responding party will have 7 days to file a response. No reply will be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

It is further ordered that if Plaintiff needs an interpreter to participate in the mediation program, Plaintiff will file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of this order.

It is further ordered that the Clerk of Court is further directed to add the Nevada Department of Corrections to the docket as an Interested Party and electronically provide a copy of this order and copies of all items previously filed in this case by regenerating the Notices of Electronic Filing on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the interested party on the docket. This does not indicate acceptance of service.

///
///
///
///
///

It is further ordered that the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Interested Party for the purpose of participation in the Early Mediation Program. No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

DATED THIS __18__ day of October 2024.

_____
Gloria M. Navarro, Judge
United States District Court

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| KENYA K. HALL,<br><br>　　　　　　　　　　Plaintiff<br><br>　v.<br><br>CHRIS BOYLE, et al.,<br><br>　　　　　　　　　　Defendants | Case No. 2:24-cv-00800-GMN-BNW<br><br>REPORT OF ATTORNEY GENERAL<br>RE: RESULTS OF 90-DAY STAY |

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF WILL NOT FILE THIS FORM.**

　　　　On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed.  The Court ordered the Office of the Attorney General of the State of Nevada to file a report ninety (90) days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay.  By filing this form, the Office of the Attorney General hereby complies.

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.**  [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

　　　　____  A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

　　　　____  A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not

reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

_____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

1      \_\_\_\_ None of the above three statements fully describes the status of this case.  Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

    Submitted this _____ day of _____, _____ by:

Attorney Name: _____   _____
                            Print                                            Signature

Address: _____       Phone:
            _____      _____
                                                      Email: _____